IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

GREGORY P. GRISHAM )
    Plaintiff, )
)
v. ) Civil Action No. TMD 12-1976
)
)
)
CAROLYN W. COLVIN, )
Commissioner of Social Security )
)
    Defendant. )

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Gregory P. Grisham ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C.§§ 401-433, 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 14) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 18). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff filed his applications for DIB and SSI on July 3, 2008 alleging disability since March 1, 2005 (subsequently amended to February 27, 2008) on the basis of arthritis, partial

deafness, seizures, vertigo and bipolar disorder. R. at 12, 184-190, 205. His claims were denied initially and on reconsideration. R. at 95-99, 101-04. On February 9, 2011, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. R. at 36-82. Plaintiff was represented by counsel. In a decision dated June 22, 2011, the ALJ denied Plaintiff's request for benefits. R. at 9-23. The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-4.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claims for DIB and SSI using the sequential processes set forth in 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since his amended alleged onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: chronic obstructive pulmonary disease ("COPD"), history of pneumonia and puemothorax, bipolar disorder, history of poly-substance dependence, degenerative disc disease of the cervical and lumbar spine, and hearing loss. At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that, given his Residual Functional Capacity ("RFC") Plaintiff was not capable of performing his past relevant work. At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, he concluded that Claimant was not disabled. R. at 9-23.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

## IV. Discussion

Plaintiff argues that the ALJ erred (1) in his RFC assessment; (2) in his treatment of the opinion of the treating physician; (3) in the formulation of the hypothetical to the VE; and (4) in his analysis of the Listings. The first three arguments will be addressed together because of the overlap of issues.

    A.    <u>RFC Assessment, Treating Physicians and VE Hypothetical</u>

The ALJ found Claimant limited to light work with various postural limitations. R. at 17. Plaintiff argues that the ALJ should have given more weight to the opinion of his treating

physician, Dr. Willis, who opined that he was only capable of less than sedentary work. R. at 468-71. Specifically, Dr. Willis found that Claimant could not sit for 6 hours out of an 8 hour workday, cannot stand for 2 hours out of an 8 hour workday and cannot lift and carry objects weighing up to 10 pounds. R. at 469. Dr. Willis additionally found that Claimant's impairments required him to lay down for 4 hours of an 8 hour workday, would be absent from work for a minimum of 30 days during the work year and his hearing impairment required him to see the speaker in order to interpret what was being said. R. at 470-71.

Under the "treating physician rule", a treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record. *See* 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir.1996); 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro,* 270 F.3d at 178.

Dr. Willis treated Claimant for a period of over two years. In reviewing Dr. Willis' opinion, the ALJ afforded it minimal weight as "it is inconsistent with the medical evidence which indicates the claimant was renovating a house in June 2010 (Exhibit 27F/1[R. at 437]) and riding his bike in June 2009 (Exhibit 11F[R. at 387])." R. at 21. While the record certainly contains notations that Claimant was renovating his house and reported enjoyment riding his

4

bike, the ALJ also cited other medical evidence inconsistent with Dr. Willis' opinion. For example, the ALJ noted a January 15, 2009 consultative examination showed that Claimant's physical examination was "basically normal with no evidence of acute inflammatory process in the major joints oh his body." R. at 18, 372-75. Claimant walked without the assistance of a cane or crutch and was able to stand on his toes and heels as well as squat and rise from a squatting position. *Id.* Dr. Hunt also noted that Claimant exhibited normal strength in both his upper and lower extremities. *Id.* The ALJ also thoroughly reviewed both X-Ray and MRI findings but noted that treatment notes reflected Claimant was traveling and swimming as well as renovating a house and riding his bike as mentioned above. R. at 19. *See also* R. at 331 (treatment notes reflecting 5/5 motor strength, full range of motion in back and negative straight leg raise); 332 (treatment notes reflected that low back pain resulting from a lot of walking). The Court finds substantial evidence supports the ALJ's decision to afford the opinion of Dr. Willis minimal weight given the other medical and non-medical evidence in the record.[1]

Plaintiff next argues that the ALJ erred in his treatment of Dr. Nicholas Scotto's mental assessment of Claimant. He asserts that despite affording Dr. Scotto's opinion "great weight", the ALJ neglected to include Dr. Scotto's detailed findings into the RFC. R. at 297-99. In reviewing Dr. Scotto's opinion,[2] the ALJ noted that he opined Claimant was not then abusing drugs or alcohol. R. at 21. He afforded great weight to this opinion. The RFC assessment to

---

[1] Plaintiff also argues that the hypothetical to the VE was improper because it only limited him to light work which was inconsistent with Dr. Willis' assessment. For the reasons discussed above, this argument also fails.

[2] The Court notes that the ALJ incorrectly referred to Dr. Scotto as Dr. Nicholas Scott. R. at 21.

5

which Plaintiff refers is found in Exhibit 14E which was part of the brief to the Appeals Council in this action. In that brief, Plaintiff's counsel included a Medical Assessment Report completed by Dr. Scotto. Accordingly, the ALJ could not have erred in his consideration of that assessment because it was not before him. R. at 1-5, 295-300.

Nevertheless, the report was considered by the Appeals Council which found that it did not provide a basis for changing the ALJ's decision. R. at 1-5. The Appeals Council must consider additional evidence when it is new, material, and relates to the period on or before the date of the administrative law judge hearing decision. 20 CFR 404.970; *Wilkins v. Secretary, Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir.1991). Evidence is new if it is not duplicative and cumulative. *Id. at 96.* Evidence is material if "there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* The Appeals Council is under no obligation to "articulate its rationale for denying a request for review." *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir.2011). However, this Court must review the record as a whole, including additional evidence submitted to the Appeals Council, to determine whether the ALJ's denial of benefits was supported by substantial evidence. *Id.* at 707; *Wilkins,* 953 F.2d at 96 (reviewing a treating physician opinion submitted to the appeals council, finding that remand was appropriate where this opinion was material and not contradicted by the record.). Here, the evidence was submitted *after* the ALJ rendered the decision but was nonetheless made part of the record. Even assuming the evidence is new and related to the relevant period, the Court does not find that the evidence would have changed the outcome.

Dr. Scotto's assessment indicates that Plaintiff had been seen since April, 2009 and that

Plaintiff was then currently engaged in outpatient treatment. R. at 297. Diagnoses included Bipolar I Disorder, Most Recent Episode Depressed, Severe without Psychotic Features, Generalized Anxiety Disorder, Opiate Abuse and Cocaine and Alcohol Dependence. *Id.* He described Claimant to have worsening depression with suicidal ideation, hopelessness, feelings of impending doom, low self esteem, helplessness, sadness, isolation, poor concentration, anhedemia and guilt. *Id.*

After a review of the record, the Court finds that the evidence would not have likely changed the outcome. Claimant had previously been diagnosed with Bipolar Disorder as recognized by the ALJ. The ALJ reviewed the results of the psychological examination performed by Dr. Arnheim who had observed that Claimant articulated clearly and could be understood without difficulty while volunteering information and conversing spontaneously. R. at 21, 343-50. Significantly, Dr. Arnheim noted Claimant was able to process, comprehend and respond to questions and directions. He denied suicidal ideation. Testing further revealed intelligence in the average range. *Id*. The ALJ also reviewed Claimant's treatment records from Baltimore Behavioral Health (where Dr. Scotto practiced, R. at 68) noting that Claimant received treatment and was prescribed medication which seemed to control his symptoms. R. at 21, 440. All of this evidence relied upon by the ALJ constitutes substantial evidence to support his decision. The newly filled in assessment from Dr. Scotto is unsupported by any psychological or psychiatric testing, R. at 297 and is inconsistent with the other medical

7

evidence in the record. The evidence is not material and would not have likely changed the ALJ's decision.[3]

Closely related to the argument above, Plaintiff alleges that ALJ's RFC finding regarding his mental impairment were inadequate because it only included a limitation to unskilled work which is repetitive in nature and involves following a routine; limited to a work environment with general goals versus production rate goals, and be allowed to work independently. R. at 17. He alleges that the ALJ failed to give specific and detailed findings regarding his ability to understand, carry out and remember instructions, use judgment in making work-related decisions, respond appropriately to supervision, co-workers and work situations and deal with changes in the work environment. However, as S.S.R. 96-8p makes clear: "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." Apart from the evaluation of Dr. Scotto discussed above, Claimant does not point to any other evidence in the record which would support mental RFC limitations other than that found by the ALJ. In short, the ALJ is required to make a reasoned assessment in determining non-exertional capacity. SSR 96–8p. The ALJ easily met this burden in his thorough narrative detailing Claimant's mental examinations and reports and expressing

---

[3] The Court also rejects Plaintiff's assertion that he meets Listing 12.04(a) or (B) based on Dr. Scotto's Medical Assessment discussed above or that the metal RFC was in error as discussed above. The other evidence in the record, including Dr. Scotto's notes, does not support a finding that Claimant meets all the elements of the Listings.

his findings on the ultimate issue. The ALJ's findings are supported by substantial evidence.[4]

B.  Listing 1.04

Plaintiff contends that the ALJ failed to properly identify and fully analyze Listing 1.04 at step three in the sequential evaluation process. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler,* 785 F.2d 1147, 1152 (4th Cir.1986).

> Listing 1.04 defines impairments related to disorders of the spine as follows:
>
> *Disorders of the spine* (e.g., herniated nucleus pulposus ... spinal stenosis, osteoarthritis, degenerative disc disease, ... ), resulting in compromise of a nerve root ... or the spinal cord.
>
> With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or....
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

---

[4] For these same reasons, the Court rejects Plaintiff's argument that the hypothetical to the VE should have included the mental findings contained in Dr. Scotto's Medical Assessment.

The ALJ specifically found Claimant did not meet Listing 1.04 citing to various MRI's and other evidence in the record. R. at 15. While Claimant points to some evidence of neuro-anatomic distribution of pain, he does not argue limitation of motion in the spine or if involvement in the lower back, evidence of positive straight leg testing. Pl.'s Mot. Summ., ECF No. 14 at 39-40. *See* R. at 331-32, 440, 443

With respect to Section C, the evidence in the record does not rise to the level to satisfy an inability to ambulate effectively. Effective ambulation is defined by 20 C.F.R. Part 404, Subpart P, Appendix I § 100B(2)(b)(2) as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace ... the inability to carry out routine ambulatory activities, such as shopping and banking ... The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Here, Plaintiff argues that he satisfies this element because he consistently required the use of a cane. While the record demonstrates that there was a recommendation for the use of a cane, there was also evidence where Plaintiff indicated he was feeling better and specifically not using a cane. R. at 15, 440. In addition, as discussed above, the ALJ noted that Claimant was working on renovating a house and riding a bike which is certainly inconsistent with an inability to ambulate effectively. R. at 387, 440 (Claimant reports of riding his bike).

## V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: January 9, 2014                              _____/s/_____
                                                   THOMAS M. DIGIROLAMO
                                                   United States Magistrate Judge